## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

TIMOTHY G. ROSE                                                    PLAINTIFF

V.                          No. 4:22-CV-671-BSM-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                              DEFENDANT

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge Brian S. Miller. Either party may file written objections to this

Recommendation. If objections are filed, they should be specific and should include

the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk

within 14 days of this Recommendation. If no objections are filed, Judge Miller can

adopt this Recommendation without independently reviewing the record. By not

objecting, parties may also waive the right to appeal questions of fact.

### I.    Introduction

At the outset, the Court notes that the Administrative Transcript *(Doc. 7)* was

incorrectly filed. The first half of the transcript relates to another disability claimant.

The correct administrative record for this case begins at page 636 of the 1247-page

record. *(Doc. 7)*.

On October 8, 2019, Plaintiff Timothy G. Rose ("Rose") filed an application for Title II disability insurance benefits. (Rose Tr. at 13). On the same day, he filed a Title XVI application for supplemental security income. *Id.* In both applications, he alleged disability beginning on September 21, 2015.[1] *Id.* In a written decision dated May 5, 2021, an administrative law judge ("ALJ") denied the applications. (Rose Tr. at 13–24). The Appeals Council denied Rose's request for review on May 18, 2022. (Rose Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Rose has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.    The Commissioner's Decision

The ALJ found that Rose had not engaged in substantial gainful activity since the amended alleged onset date of May 18, 2020.[2]  (Rose Tr. at 16). At Step Two, the ALJ determined that Rose has the following severe impairments: morbid obesity, right ulnar neuropathy, depression, and anxiety. *Id.*

---

[1]  Rose subsequently amended his alleged onset date to May 18, 2020. (Rose Tr. at 14).

[2]  The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

At Step Three, the ALJ determined that Rose's impairments did not meet or equal a listed impairment.[3]  (Rose Tr. at 17–18). Before proceeding to Step Four, the ALJ determined that Rose had the residual functional capacity ("RFC") to perform work at the light exertional level, with some additional limitations: (1) he can no more than frequently handle and finger bilaterally; (2) he is able to do simple, routine tasks with few variables and little judgment; (3) he needs supervision that is simple, direct, and concrete; and (4) his social interaction should be incidental to the work performed. (Rose Tr. at 18).

At Step Four, the ALJ determined that Rose is unable to perform any of his past relevant work. (Rose Tr. at 23). Relying upon testimony from a Vocational Expert ("VE"), the ALJ found, based on Rose's age, education, work experience and RFC, there are jobs in the national economy that Rose can perform, including positions such as air purifier servicer, housekeeping cleaner, and vine pruner. (Rose Tr. at 24). Therefore, the ALJ concluded that Rose was not disabled. *Id*.

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's

---

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

4

**B.   Rose's Arguments on Appeal**

Rose contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ did not properly consider Rose's subjective complaints; and (3) the RFC did not fully incorporate Rose's limitations.

Rose suffered from hand and wrist pain, with greater compromise in his left wrist. However, a left wrist x-ray taken on December 26, 2019, showed normal carpal alignment and no bony abnormality.[4] (Rose Tr. at 497). On December 31, 2019, Rose's doctor noted good bilateral grip and good distal pulses. (Rose Tr. at 495). In January 2020, APRN Robin L. Franke examined Rose and found that he had decreased range of motion in his bilateral wrists. (Rose Tr. at 499–504). But she observed that Rose was able to hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin. *Id*. Nurse Franke said that his ability to handle and finger were slightly limited due to carpal tunnel syndrome. *Id*. She also wrote that Rose would need a nerve conduction study to determine the severity of carpal tunnel syndrome. *Id*. A July 2020 nerve conduction study revealed left carpal tunnel

---

[4] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

syndrome and right ulnar neuropathy. (Rose Tr. at 510–14). Rose did not require aggressive treatment, such as injections or surgery, for his wrist problems. At the January 2021 hearing, Rose said he had not followed up for further treatment.[5] (Rose. Tr. at 21, 54).

Rose also suffered from anxiety and depression, but he improved over time with the use of medication.[6] (Rose Tr. at 570–93). In late 2020, Rose said he was doing better with controlling his anxiety by using coping skills. (Rose Tr. at 571). Rose experienced an isolated panic attack in November 2020, but he reported that he was better the following month and had no more episodes. (Rose. Tr. at 20, 571). The Disability Determination Services ("DDS") medical and psychiatric experts reviewed the records and opined that Rose could perform medium exertional work at the unskilled level.[7] (Rose Tr. at 77–116). The ALJ discussed these opinions and

---

[5] A failure to pursue treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[7] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).
Unskilled work is not complex. 20 C.F.R. §§ 404.1568(a), 416.968(b) SSR 83-10 (unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

found the limitation to unskilled work to be persuasive.[8] (Rose Tr. at 21). Considering the balance of the medical evidence, however, she reduced Rose's RFC to light exertional work rather than medium. (Rose Tr. at 18).

William Berry, M.D., completed a medical source statement in November 2020, stating that Rose could not perform light work due to carpal tunnel syndrome. (Rose Tr. at 561–64). The ALJ noted that Dr. Berry did not cite to any medical evidence or objective testing in support of his opinion. For this reason, he found the opinion only somewhat persuasive.[9]

---

[8] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021*); Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, *2–*3 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520c(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips, supra*; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

[9] A conclusory medical source statement has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

Rose admitted that he could perform daily activities in a function report filled out by his wife. (Rose Tr. at 20, 240–47). He said he could play video games, watch TV and movies, shop, and go to church.[10]  *Id*. He could do some cooking and attend to personal care (after "nagging from his wife…."). (Rose. Tr. at 242).

Rose argues that the ALJ should have further developed the record before determining the RFC.[11]  He urges that the ALJ erred by not recontacting Nurse Franke, and by not providing her with the nerve conduction study. He likewise asserts that the ALJ should have ordered a mental consultative examination.

The ALJ considered the nerve conduction study and limited Rose's handling and fingering accordingly. (Rose Tr. at 18). The nerve conduction study affirmed what Nurse Franke surmised, so there was alignment there. And Rose's conservative treatment and failure to follow up suggested that his conditions were not as limiting as he alleged, nor did the conditions deteriorate during the relevant time-period.

---

[10] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[11] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant, and the ALJ's duty to develop is not never-ending. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

There was no major conflict in the medical evidence, and the ALJ properly discussed all of the relevant evidence.

The same is true for Rose's mental impairments. The ALJ found them to be severe at Step Two, and provided sufficient limitations in the mental portion of the RFC (limitation to unskilled work). (Rose Tr. at 18). Rose's positive response to treatment and improvement over time obviated the need for supplemental consultative examinations.

Rose also contends that the ALJ did not properly evaluate his subjective complaints.[12] In fact, the ALJ discussed the nature and extent of Rose's pain, his positive response to conservative treatment, and his daily activities. (Rose Tr. at 18–24). She properly concluded that Rose's assertions that he was disabled were inconsistent with the evidence in the record as a whole.

Finally, as discussed above, the ALJ fully considered and discussed the factors supporting his RFC decision.[13] The limitation to light work with handling and

---

[12] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

[13] A claimant's RFC represents the most he can do despite the combined effects of all of

9

fingering restrictions incorporated the objective findings and the opinion evidence. In fact, the RFC was more restrictive than the limitations imposed by Nurse Franke or the DDS medical experts, which means the ALJ did credit some of Rose's complaints. Moreover, the RFC limitation to unskilled work fully incorporated Rose's mental impairments. Overall, Rose has not made his case for disability: treatment was conservative, Rose experienced improvement, and he could perform a variety of daily activities. The medical opinions were generally in agreement, and the ALJ fully explained how he considered such opinions.

### III.   Conclusion

There is substantial evidence to support the Commissioner's decision that Rose was not disabled. The ALJ based his decision on a fully developed record, the ALJ properly considered Rose's subjective complaints, and the RFC incorporated all of Rose's credible limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 6th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

_____

his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).